## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| JUAN JACOME | § | |
| *Plaintiff* | § | |
| v. | § | |
| | § | |
| JUST ONE DIME, LLC; JUST ONE DIME | § | |
| COACHING, LLC, d/b/a DONE FOR YOU | § | |
| BY JUST ONE DIME; VERITUS TEXAS | § | Case Number: |
| ONE, LLC, f/k/a VERITUS A SERIES OF | § | 1:22-cv-1196-LY |
| EMBUE, LLC; ACTONICUS TEXAS ONE, | § | |
| LLC, f/k/a ACTONICUS, A SERIES OF | § | |
| EMBUE, LLC; TRAVIS S. KNIEP; BRETT | § | |
| GEORGE; JOSIAH KNIEP; and KIMBERLY | § | |
| KNIEP | § | |
| *Defendants* | § | |

## PLAINTIFF JACOME'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, Juan Jacome ("Plaintiff" or "Mr. Jacome") by and through his undersigned counsel, files this Original Complaint against Defendants Just One Dime, LLC; Just One Dime Coaching, LLC, d/b/a Done For You by Just One Dime; Veritus Texas One, LLC, f/k/a Veritus, a Series of Embue, LLC; Brett George, Josiah Kniep, Travis S. "Seth" Kniep (these Defendants collectively referred to herein as

"JOD" or "JOD Defendants"); Actonicus Texas One, LLC, f/k/a Actonicus, a Series of Embue, LLC; and Kimberly Kniep, and allege as follows:

## I.  THE PARTIES

1.      **Plaintiff Juan Jacome** is an individual residing in the state of Georgia.

2.      **Defendant Just One Dime, LLC,** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Travis S. Kniep, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729.

3.      **Defendant Just One Dime Coaching, LLC, d/b/a Done for You By Just One Dime** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Travis S. Kniep, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729.

4.      **Veritus Texas One, LLC, f/k/a Veritus, a Series of Embue, LLC** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service of process is Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Texas, 78731.

5.      **Actonicus Texas One, LLC, f/k/a Actonicus, a Series of Embue, LLC**
is a limited liability company organized under the laws of the State of Texas.
Defendant's principal place of business is in Austin, Texas, in Travis County.  Its
registered agent for service of process is Registered Agents, Inc., 5900 Balcones
Drive, Suite 100, Austin, Texas, 78731.

6.      **Defendant Travis. S. "Seth" Kniep** is an individual residing in Austin,
Texas, in Travis County.  He may be served with process at his place of business,
8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729, or wherever he may be
found.

7.      **Defendant Brett George** is an individual employed by a company in
Austin, Texas. He may be served with process at his place of business, 8516
Anderson Mill Road, Suite 200, Austin, Texas, 78729; at his residential address,
3611 Blue Stem Drive, Tuttle, Oklahoma 73089; or wherever he may be found.
Defendant George was the sole member of N2 Ecom/Just One Dime Group, which
is now inactive.

8.      **Defendant Josiah Kniep** is an individual residing in Austin, Texas, in
Williamson County.  He is a co-founder and CEO of Just One Dime.  He may be
served with process at his place of business, 8516 Anderson Mill Road, Suite 200,

Austin Texas, 78729; at his residence, 13306 Perthshire Street, Austin, Texas, 78729; or wherever he may be found.

9.     **Defendant Kimberly Kniep** is an individual residing in Austin, Texas, in Travis County.  She is the wife of Defendant Travis S. Kniep and the mother of Defendant Josiah Kniep.  She may be served at 13306 Perthshire Street, Austin, Texas, 78729; 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729; or wherever she may be found.

## II. <u>PERSONAL JURISDICTION</u>

10.     This Court has personal jurisdiction over the corporate Defendants because these LLCs are organized and have a registered agent in Texas.

11.     Defendant Travis S. ("Seth") Kniep is a resident of Texas.

12.     Defendant Josiah Kniep is an individual who resides in Texas and has purposely availed himself of the laws and protections of the state of Texas by working full-time for a Texas company.

13.     Defendant Kimberly Kniep is a resident of Texas.

14.     Defendant Brett George is an individual who has purposely availed himself of the laws and protections of the state of Texas by working full-time for a Texas company.

15.     Based on their general and specific contacts with the State of Texas, Defendants have personally availed themselves of the privilege of conducting activities within the State of Texas and have minimum contacts with the State of Texas.

16.     Additionally, Paragraph 14 of the Services Agreement between Mr. Jacome and Just One Dime ("the Services Agreement"), the contract that governs in this matter, provides, in part:

> Both parties agree that any litigation or arbitration between the parties will take place in Travis County, Texas.  Both parties consent to and waive any objection to personal jurisdiction or venue in any forum located in that county, the personal jurisdiction and the exclusive venue of all federal and state courts in Travis County, Texas, for hearing all disputes under this Agreement.

### III.  SUBJECT MATTER JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is over $75,000.  There is also complete diversity of citizenship between the parties.

18.     Furthermore, this Court has subject matter jurisdiction under 28 USC § 1331, as this case raises a federal question under the laws of the United States.

19.     Venue is proper in this district under 28 U.S.C. §1391(b)(1), because the JOD Defendants reside and/or work in this district.

20.     Specifically, all but two of the Defendants are located in Travis County, Texas, part of the Austin Division of the Western District of Texas; and the remaining two Defendants are employed by a company in Travis County.

## IV.  CONDITIONS PRECEDENT

21.     All conditions precedent to this action have been performed, have occurred, or have been waived.

## V. STATEMENT OF FACTS

### A.  Done For You's Program & Promises

22.     Done For You ("DFY") by Just One Dime ("JOD") is a group of companies led by Travis S. "Seth" Kniep that pitches itself as a "turnkey service" which "turns your investment into a full-blown business on Amazon which we manage end-to-end, making it a passive investment for you."[1]

---

[1] *See* Exhibit 1, Power Point Presentations.



23.     Travis Kniep makes it clear in recruitment videos that JOD does not provide coaching or training for its "Done For You" clients (also abbreviated as the "DFY Program by JOD"), as all work is done by JOD.  JOD further pledges that it launches "only high ticket products with strong margins," and that "[i]nstead of going for high sales velocity at razor thin margins, we sell products with huge profit chunks per sale."[2]

24.     In an email sent to another investor, JOD advertises that it has its own Chinese staff at a warehouse in China, which gives it a huge leg up on the competition.[3]

---

[2] *Id.*
[3] *See* Exhibit 2, email, "You're Booked!"

25.     JOD claims it is highly selective in choosing its investors, and it goes through the motions of screening prospective investors.

26.     In truth, JOD accepts anyone and everyone who will pay its initiation fees. This results in many of its investors competing against each other for sales of essentially the same products.

27.     In a cash flow example using a product that sells for $100, JOD asserts that $60 goes to costs (including $15 to Just One Dime) and the remaining $40 goes to the seller.[4]

28.     Sadly, what Mr. Jacome has learned after sinking thousands of dollars into the JOD program is that it does *not*, in fact, provide turnkey service, it does *not* provide high-ticket items, and it does *not* provide anything approaching a 40% cut to the seller.

29.     JOD promises that investors will eventually be able to resell their JOD businesses for at least 50 times their original investments.[5] A video entitled "Amazon Automation – Risk For Thee, None For Me" from YouTuber Coffeezilla

---

[4] *See* Exhibit 1.
[5] *See* Exhibit 3, JOD video "Amazon Automation – FBA Business Run for You" at https://www.youtube.com/watch?v=5aIIFqCW2ec (July 31, 2020), with accompanying Transcript. Note: video exhibits will be provided to the Court via flash drive.

features a clip of Defendant Travis Kniep stating that a conservative return on investment within 12 months is 200%.[6]

30.     Interestingly, that statement is redacted from the more recent versions of the video being used by JOD.

31.     But, JOD's eventual removal of this guarantee from the video does not negate the fact that numerous JOD customers, including Plaintiff Jacome, relied on it to their detriment.

### B. *Plaintiff Juan Jacome*

32.     Mr. Jacome has been a portfolio manager for 22 years.  His income is the sole support for his wife and six children, including triplet sons who will soon graduate from high school.

33.     In 2020, Mr. Jacome invested in JOD's Done For You program with the goal of raising money for his children's college tuition.

34.     However, instead of creating a source of passive income for Mr. Jacome, JOD caused him to lose a substantial amount of money.

---

[6] *See* Exhibit 4, https://www.youtube.com/watch?v=r_EfpOV2VV0, at 3:58.

### C. *JOD Services Agreement*

35.     On December 23, 2020, Plaintiff Juan Jacome entered into a Services Agreement with Just One Dime Coaching, LLC in which JOD stated it would be "building, managing, optimizing and scaling an Amazon store" for Mr. Jacome.[7]

36.     Defendant Just One Dime, LLC is the "flagship" company founded and run by Travis "Seth" Kniep and his son, Josiah Kniep. Defendant Just One Dime Coaching, LLC is also one of the trade names used by Just One Dime. "Exhibit A" of the Services Agreement ("the Agreement") contains a laundry list of services JOD (referred to in the Agreement as "The Company") promised to supply for Mr. Jacome ("the Client"):[8]

37.     These services included finding unique, high-quality products with favorable profit margins, applying for brand protection programs on Amazon to prevent others from "piggy-backing" on Mr. Jacome's listings; and building, testing, and optimizing Amazon PPC ads on Mr. Jacome's listings to increase their rankings on the website.

38.     The Agreement also promised that JOD would respond to critical purchaser reviews and negative seller feedback.

---

[7] *See* Exhibit 5, Services Agreement, including Exhibits A-C.
[8] *Id.*

39.     Exhibit C of the Agreement[9] includes a rundown of financial responsibilities and payouts assigned to JOD and to Mr. Jacome, respectively. Exhibit C provides:[10]

> Company is providing the service of building and managing the store on Amazon.
>
> Client is paying for all business costs including, but not limited to manufacturing, shipping, customs & duties, photography, product videos, PPC [pay per click advertising], Amazon FBA fees, etc.
>
> FBA fees, the monthly Amazon professional account fee, and PPC fees will be paid to Amazon by the Client directly.
>
> All other expenses will be paid by Client to the Company and then Company will pay the vendor directly.  This includes the supplier, the freight-forwarding company, or any other third party who provides a service to help grow the store.  The Company will invoice the Client, payable within 15 days of sending the invoice.
>
> The Client will pay the Company for its services as follows:
>
> - $30,000 for building the Amazon store and launching 3 product(s) on Amazon including the services in Exhibit A. This is due before Company begins building the Amazon store. Client may pay Company to launch more products in the near future.
>
> - A percentage of gross sales revenue is payable to Company on a sliding scale.  Company will send an invoice to Client every 3 months, payable within 15 days of sending the invoice, based on the following profit margins:

---

[9] *Id.*

[10] *Id.*

- 0% to 9.99% margin – Just One Dime receives nothing

- 10% to 19.99% margin – Just One Dime receives 5% gross sales revenue

- 20% to 29.99% margin – Just One Dime receives 10% gross sales revenue

- 30% and above margin – Just One Dime receives 15% gross sales revenue.

- Revenue share is capped at 15% gross sales revenue

- One time fees such as product launch fee and photography are not used to calculate profit margin.  Profit margin is calculated based on ongoing fees such as manufacturing, shipping, Amazon fees, and PPC.

- $3,650 annual fee for account maintenance of Amazon store due 12 months after signing and every 12 months thereafter.  For every $500,000 in annual gross sales revenue generated on the Amazon store an additional $3,650 annual fee is charged.  If this agreement is terminated, maintenance fees are prorated.

- $10,000 per product for any additional product launches, refundable within 30 days if Company fails to launch the product.

- 15% of sales price to Company if Client chooses to sell the business during this agreement or two years after termination of agreement by either party.  "Business" does not include the LLC, Corporation or business identity that holds the business, but does include the Amazon store, trademarks, patents, logo, graphic designs, the products themselves, procedures, customer contact info, and anything else owned by or directly necessary for running the business itself.

40.    Of course, Exhibit C does not mention advertising costs, which Mr.

Jacome learned would be considerable, and are the responsibility of the investor.

41.     The initial fee of $10,000 per product is a "development fee" that goes entirely to JOD's "overhead" costs, so Mr. Jacome needed to raise the $30,000 initiation fee for his first three private label products *plus* the costs of the products themselves, shipping fees, trademark registration costs, and various other expenses for which he was responsible under the Agreement.

42.     Based on the investment plan JOD presented to him, Mr. Jacome believed he had found a reliable way to greatly supplement his income.

43.     On December 30, 2020, per the Services Agreement, Mr. Jacome sent his initial payment of $30,000 to JOD via Quickbooks.[11]

44.     Mr. Jacome soon received a welcome video from his assigned "brand builder" Defendant Brett George, who identified himself as a co-founder of JOD.[12] Defendant George spoke animatedly about how exciting this opportunity was and stated that someone would contact Mr. Jacome within 72 hours to set the kickoff schedule.

### D. Broken Promises

45.     Contrary to Defendant George's promises that the Amazon business would be quickly started, that was not the case.   Promised meetings were delayed,

---

[11] *See* Exhibit 6, Quickbooks receipt for payment.
[12] *See* Exhibit 7, Brett George welcome video.

and Mr. Jacome was told they would be scheduled "soon" or "ASAP."[13] "Unstable shipping prices" was a frequent excuse JOD gave for not having products.

46.    It was not long before Defendant George informed Mr. Jacome he would no longer be available for regular meetings, as he was heavily focused on the "operational piece" of the project in order to get Mr. Jacome money.[14]

47.    When about nine months had passed and JOD still had not supplied Mr. Jacome with products, he began to ask questions.[15]

48.    In an effort to quiet Mr. Jacome's complaints, JOD convinced him to sign a Confidentiality/Non-Disclosure Agreement.[16]   Mr. Jacome signed the agreement on September 30, 2021.   Mr. Jacome does not consider this gag agreement to be enforceable against him, as Defendants have refused to honor the Services Agreement.  In addition, the Confidentiality/Non-Disclosure Agreement improperly violates the Consumer Review Fairness Act, which "makes it illegal for companies to include standardized provisions that threaten or penalize people for posting honest reviews."[17]

---

[13] *See, e.g.*, Exhibit 8, First product meeting with Mr. George via Slack.
[14] *See* Exhibit 9, recording of JOD/DFY product meeting.
[15] *See* Exhibit 10, recording of requested meeting with Mr. George via Slack.
[16] *See* Exhibit 11, DFY Confidentiality/Non-Disclosure Agreement.
[17] *See* https://www.ftc.gov/business-guidance/resources/consumer-review-fairness-act-what-businesses-need-know

49.     Finally, almost a year into the process, JOD proposed three products to Mr. Jacome:  a cordless air foot/calf massager, an air massage mattress with carry bag and massage ball, and a pumping hand massager.  Mr. Jacome immediately realized the proposed products were not only lacking "strong margins," but they were lacking any margins at all.  A bit of research on Mr. Jacome's part revealed that his assigned products were more expensive than similar competitor products.

50.     Mr. Jacome messaged Defendant Travis Kniep that he was not happy with the products he received, explaining they were not viable.  Instead of addressing the fact that the three proposed products were not economically viable, Defendant Travis Kniep derided Mr. Jacome, saying,

> "If you feel the products are not good enough, please remember that you are paying us for our expertise – not to tell us what is a good product or not.  If you have questions, that is totally fine, but we will not choose a product that we do not fully believe in."[18]

51.     Mr. Jacome did not ultimately receive any of the products JOD assigned him.  After a period of debate between JOD and Mr. Jacome regarding the viability of the proposed products, JOD repeatedly attempted to pressure Mr. Jacome to switch over to JOD's Online Arbitrage program. The Online Arbitrage

---

[18] Exhibit 12, Mr. Jacome's product questions, 12/15/21.

would have gutted the consumer protections from DFY contract and is highly favorable to JOD against its investors.

52.     When Mr. Jacome questioned certain portions of the Online Arbitrage contract, Defendant Travis Kniep became combative.  Mr. Jacome elected not to enter the JOD arbitrage program.

53.     Mr. Jacome ultimately asked JOD to refund his investment.  However, JOD refused his request.

54.     On October 14, 2022, Defendant Travis Kniep sent a form e-mail to JOD investors (Mr. Jacome excluded) stating that the Done For You program would be ending on October 28, 2022.  Defendant Travis Kniep reiterated that there will be no refunds for Done For You investors, but that investors are welcome to participate in JOD's Online Arbitrage program, <u>which requires payment of an additional $20,000</u> to fund products.[19]  Mr. Jacome did not receive this mail personally, but his wife received it and passed it on to him.

55.     Understandably, JOD's recent actions have caused Mr. Jacome a great deal of concern about his ability to regain the tens of thousands of dollars he has lost to Defendants.

---

[19] *See* Exhibit 22, Defendant Travis Kniep's 10/14/2022 form e-mail to investors.

**E. Defendant Kniep's Scheme to Funnel Investors' Funds to Kniep Family Investments**

56.     JOD is something of a family business for the Knieps.  Defendant Travis Kniep's adult son, Josiah, is listed with the Texas Secretary of State as the CEO of Just One Dime.[20]  Mr. Kniep's 18-year-old daughter, Atalie, is employed by JOD.

57.     Travis Kniep has publicly spoken about the tax benefits of operating shell companies.[21]  He has also recently discussed publicly the fact that he and/or his wife and children own numerous investment properties in Austin, Texas; Breckenridge, Colorado; Miami, Florida; Gatlinburg, Tennessee; Guatemala; and Mexico.[22]  He has touted his wife, Kimberly, as a stellar real estate "professional" (not a realtor) who locates investment properties.[23]  It is clear that Defendant Travis Kniep – and by extension the Defendant companies – have the ability and the will to hide the income they have accrued from JOD investors in such private investments, and Defendants could possibly transfer JOD funds to third parties to protect themselves from lawsuits.

---

[20] *See* Exhibit 13, selected LinkedIn employee entries for Just One Dime.
[21] *See* Exhibit 3 at 37:20 – 38:35.
[22] *See* Exhibit 14, JOD video "Tax-Free Wealth w/ Tom Wheelwright CPA (WealthAbility)," https://www.youtube.com/watch?v=Exfoq8c56LQ (July 26, 2021) at 33:00-33:45.
[23] *Id.*

58.     Property records show that numerous properties are registered to Josiah Kniep and to business entities owned by Travis Kniep.[24]  It is highly likely that some JOD funds have been used to purchase some of these properties.

## VI.  CAUSES OF ACTION

**COUNT 1 –** *Failure to Register Securities Under the Securities Act of 1933*

60.     Plaintiff Jacome incorporates the preceding paragraphs as if repeated fully herein.

61.     Plaintiff Jacome alleges Count 1 <u>only</u> as to the JOD Corporate Defendants and Defendants Travis Kniep and Brett George; <u>not</u> as to Defendants Actonicus Texas One, LLC; Josiah Kniep; or Kimberly Kniep.

62.     Plaintiff Jacome alleges that the contract into which he and Defendants entered is an unregistered security, and as such it violates the Securities Act of 1933, as amended (the "Securities Act").  The Securities Act broadly defines securities "to include a long list of financial instruments, including 'investment contracts.'"  *SEC v. Arcturus Corp.,* 928 F.3d 400, 409 (5th Cir. 2019).  To be classified as a security, an investment contract must meet three requirements: "'(1) an investment of money; (2) in a common enterprise; (3) with profits derived

---

[24] *See* Exhibit 15, Kniep property records.

from the efforts of others.'" *Id.,* (citing *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298-99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); and quoting *Williamson v. Tucker,* 645 F.2d 404, 417-18 (5th Cir. 1981)).

63.     Plaintiff maintains that the Services Agreement is an investment contract that constitutes a security. The transactions between Plaintiff and these Defendants satisfy the three requirements enunciated by the Supreme Court in *Howey* and followed in *Arcturus.*  First, Mr. Jacome initially paid JOD $30,000 with the understanding that JOD would do all the work to set up his Amazon store. In fact, these Defendants repeatedly informed Mr. Jacome that this arrangement did not constitute a training course or a mentorship in online selling; that JOD would be doing *everything*.[25]  Secondly, the common enterprise agreed upon was for JOD to sell, manage, and control merchandise on the Amazon website on behalf of investor Mr. Jacome.  Thirdly, Mr. Jacome's profits were to be derived from the efforts of others (i.e., Defendants).  When evaluating whether an investment was made with an expectation of profits from the efforts of others, Texas courts ask whether the efforts made by others are "those essential managerial efforts which

---

[25] *See* Exhibit 3 at 24:00, wherein Travis Kniep states "You will learn a ton because you're going to have a front row seat to everything.  But this is not training or a mentorship as that is much more time intensive.  So that would require a different pay structure."

affect the failure or success of the enterprise." *Pinter, supra,* at 73 (quoting *Searsy v. Com. Trading Corp.,* 560 S.W.2d 637, 638 (Tex. 1977).

64.     The JOD Corporate Defendants and Travis Kniep sold units in JOD's Done For You Private Label program to Mr. Jacome without first properly registering them as securities as required by the Securities Act.

65.     "The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities." *Swenson v. Engelstad,* 626 F.2d 421, 424 (5th Cir. 1980). Specifically, Section 5 of the Securities Act provides that unless "a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly. . . to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security. . ." 15 U.S.C. § 7e(a).  Section 12 of the Securities Act creates civil liability for sellers violating Section 5:

> Any person who . . . offers or sells a security in violation of section 77e of this title . . . shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
>
> 15 U.S.C. §77l(a).

66.     To make a prima facie case for the unlawful sale of an unregistered security, a plaintiff must show "(1) the sale [of] or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of the mails or facilities of interstate commerce in connection with the sale or offer." *Engelstad*, 626 F.2d at 425.  Mr. Jacome contends he satisfies that test.  First, it is clear from the Services Agreement that the JOD Corporate Defendants and Defendant Travis Kniep offered and sold units in the JOD investment. Secondly, the units Defendants sold were not properly registered as securities. Thirdly, these Defendants used online networking platforms to solicit and communicate with potential investors.  *See SEC v. Carter*, No. 4:19-CV-100SDJ, 2020 U.S. Dist. LEXIS 200391 at *4 (E.D. Tex. 2020) (concluding that communicating with potential investors through email, obtaining investment from at least one out-of-state investor, and obtaining funds from investors through wire transfer constituted offering and selling securities through interstate commerce).

67.     For Section 12 violations, the Securities Act provides a remedy of money damages that equates to a recission of the contract.  Specifically, Plaintiff can recover "the consideration paid for [the] security with interest thereon, less the amount of any income received thereon."  15 U.S.C. §77l(a).

**COUNT 2 – *Failure to register Securities Under the Texas Securities Act***

68.    Plaintiff Jacome incorporates the preceding paragraphs as if repeated fully herein.

69.    Plaintiff Jacome alleges Count 2 <u>only</u> as to the JOD Corporate Defendants <u>and</u> Defendant Travis Kniep; not as to Defendants Actonicus Texas One, LLC; Brett George; Josiah Kniep; or Kimberly Kniep.

70.    Plaintiff Jacome also seeks damages under the Texas Securities Act ("TSA").  Under the TSA, a "dealer or agent may not sell or offer for sale any securities . . . unless the commissioner has issued a permit qualifying securities for sale for those securities to the issuer of the securities or a registered dealer."  TEX. GOV'T CODE §4003.001.  A plaintiff may sue a person who offers or sells a security in violation of the registration requirements for recission of the sale.  *Id.*; §4008.051. A plaintiff entitled to recission may "recover the consideration . . . paid for the security plus interest on the consideration at the legal rate from the date the buyer made the payment, less the amount of any income the buyer received on the security."  *Id.* §4008.05(a).

71.    The definition of "security" under the Texas Securities Act ("TSA") includes investment contracts.  The Texas Supreme Court has adopted a test to determine when investment contracts are securities under the TSA.  In *Life*

*Partners, Inc. v. Arnold,* 464 S.W.3d 660, 670 (Tex. 2015), the court found that an "investment contract" for purposes of the Texas Securities Act means "(1) a contract, transaction, or scheme through which a person pays money (2) to participate in a common venture or enterprise (3) with the expectation of receiving profits, (4) under circumstances in which the failure or success of the enterprise, and thus the person's realization of the expected profits, is at least predominately due to the entrepreneurial or managerial, rather than merely ministerial or clerical, efforts of others, regardless of whether those efforts are made before or after the transaction." *Arnold, supra,* at 667.

72.     Mr. Jacome contends the JOD Services Agreement fits this definition of an investment contract. To qualify as an investment contract security, "the transaction must be such that, in reality, the seller or another party other than the purchaser, exercises the predominant managerial or entrepreneurial control on which the purchaser's anticipation of profits is based." *Arnold* at 674-75.

73.     The Texas Securities Commissioner has not issued a permit qualifying the JOD Services Agreement as a security in Texas or registered any of the JOD Corporate Defendants or Defendant Travis Kniep to sell securities.[26]

---

[26] *See* Exhibit 23, Certificates of the Texas Securities Commissioner affirming that the JOD, Companies and Defendant Travis Kniep were not registered with the State of Texas to sell securities, and that the JOD Services Agreements were not registered securities.

74.     Accordingly, these Defendants are liable to Plaintiff for recission under the Texas Securities Act. Upon recission, Plaintiff is entitled to recover the consideration he paid for the JOD contract plus interest thereon at the legal rate from the date of payment by him, less the amount of any income he received on the security, upon tender of the security.

**COUNT 3 –** *Breach of Contract*

75.     Plaintiff Jacome incorporates the preceding paragraphs as if repeated fully herein.

76.     Plaintiff alleges Count 3 <u>only</u> as to the JOD Corporate Defendants, and Defendant Travis Kniep; but <u>not</u> as to Defendants Actonicus Texas One, LLC, Kimberly Kniep, Josiah Kniep, and Brett George.

77.     The parties in this matter entered into a valid contract, i.e., the Services Agreement.

78.     Mr. Jacome performed all of his obligations under the contract.

79.     Those Defendants materially breached the contract by failing to complete most of their obligations under the contract, including building his Amazon store in a timely manner.

80.     Those Defendants materially breached the contract by failing to assign Mr. Jacome quality products with high profit margins as promised.

81.     As a result of these Defendants' material breach of the contract, Mr. Jacome has suffered damages.

**COUNT 4 – *Unjust Enrichment***

82.     Plaintiff Jacome incorporates the preceding paragraphs as if repeated fully here.

83.     Plaintiff Jacome alleges Count 4 <u>only</u> as to the JOD Corporate Defendants, and Defendants Travis Kniep, Josiah Kniep, Brett George, and Actonicus Texas One, LLC, but <u>not</u> Kimberly Kniep.

84.     Unjust enrichment is not a distinct independent cause of action, but rather a theory of recovery. *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied). A party may recover under an unjust enrichment theory where a person has obtained a benefit from another due to fraud, duress, or taking of undue advantage. *Id*.

85.     If Mr. Jacome does not prevail in his claim for legal remedies such as his breach of contract claim or his deceptive trade practices claim, he will lack a suitable remedy at law.

86.     Defendants' conduct in accepting Plaintiff's investment without carrying out its duties under the Services Agreement and improperly using these funds for themselves constitutes more than unfair conduct; Defendants profited from their own fraudulent claims and took undue advantage of Plaintiff.  Thus, Plaintiff seeks damages in unjust enrichment as an alternative remedy.

**COUNT 5 -** *Violations of the Texas Deceptive Trade Practices – Consumer Protection Act (TEX. BUS. & COM. CODE §17.46 ET SEQ.)*

87.     Plaintiff Jacome incorporates the preceding paragraphs as if repeated fully here.

88.     Plaintiff alleges Count 5 as to <u>all</u> Defendants except for Actonicus Texas One, LLC, Kimberly Kniep, and Josiah Kniep.

89.     Defendants engaged in an unconscionable action or course of action that, to Plaintiff's detriment, took advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree.  Specifically, Defendants lured Mr. Jacome into what they knew was an unfavorable business arrangement for him by taking unfair advantage of the fact that Defendants have far more knowledge about Amazon sales than Mr. Jacome does.

90.     Defendants falsely represented that they would  set up for Plaintiff a "full blown business" on Amazon, which they would "manage end-to-end,"

making it a "passive investment" for Mr. Jacome.  In actuality, Defendants took

Mr. Jacome's money and failed to follow through on their claims that they would

provide "turnkey service."  Mr. Jacome's initial investment of $30,000 went to pay

Defendants and their staff, but in the end Defendants failed to provide the support

and services they promised Mr. Jacome.  Mr. Jacome alone has had to bear the

losses.

91.     Defendants fraudulently employed a "bait and switch" technique,

promising a better-quality product, more marketable than the items they actually

provided. JOD drew in Plaintiff by falsely advertising that it deals only  in "high

ticket" products with large profit margins, when in reality it offered highly

competitive products on which Mr. Jacome has taken a considerable loss.

Defendants' fraudulent intent is demonstrated by evidence such as a video

presentation in which Travis Kniep personally explains to potential investors how

they can avoid liability by setting up shell companies.[27]

92.     Plaintiff Jacome has suffered economic damages from Defendants'

deceptive and fraudulent behavior, and he is entitled to treble damages and

attorney fees and costs under TEX. BUS. & COM. CODE §17.50.

---

[27] *See* Exhibit 3 at 37:20.

**COUNT 6 -** *Fraudulent transfer of funds*

93.     Plaintiff Jacome incorporates the preceding paragraphs as if repeated fully herein.

94.     Plaintiff Jacome brings this claim under the Texas Uniform Fraudulent Transfer Act ("TUFTA") under Chapter 24 of the Texas Business & Commerce Code.

95.     The fraudulent transfer was a transfer of funds Plaintiff Jacome invested in the JOD "Done For You" program.  Defendants Travis Kniep and his Done for You program contracted with Plaintiff Jacome to perform certain services.  Defendants failed to perform the services for which they contracted, and on information and belief, they used Mr. Jacome's investment to buy numerous properties.

96.     On information and belief, the fraudulent transfer was made by Defendants for their own financial benefit, and to the sole detriment of Plaintiff Jacome and similarly situated "creditors" of JOD.  The JOD Defendants now claim they do not have the funds issue refunds to the program's investors.

97.     Defendants transferred said assets without receiving a reasonably equivalent value in exchange for the transfer, as they transferred the funds without

transferring their debts; and Defendants intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.  *See* TEX. BUS. & COM. CODE §24.0005(2)(B).

98.     Plaintiff Jacome has suffered damages due to the Defendants' fraudulent behavior and is entitled to judgment in his favor for the value of the assets transferred up to the amount of any judgment he receives.

**COUNT 7 – *Conspiracy to Commit Fraud***

99.     Plaintiff Jacome incorporates the preceding paragraphs as if repeated fully here.

100.    First, all of the named Defendants were members of a combination of two or more persons.

101.    Second, the object of the combination was to accomplish (1) an unlawful purpose, or (2) a lawful purpose by unlawful means, the other claims in this Complaint.

102.    Third, the members of the said group had a meeting of the minds on the object or course of action.

103.     Fourth, one or more of the members committed an unlawful, overt act to further the object or course of the action; to wit:  they used income improperly obtained from JOD Done For You investors to locate and/or purchase lucrative properties for the benefit of the Kniep family.[28]

104.     Several of these properties are in the name of Defendants Josiah Kniep or Actonicus Texas One, LLC.[29]

105.     Plaintiff suffered damages as a proximate cause of Defendants' improper actions.

## VII.  JURY DEMAND

106.     Plaintiff Juan Jacome asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VIII.  PRAYER FOR RELIEF

Wherefore, Plaintiff Jacome prays for judgment as follows:

    a.  Actual and economic damages including liquidated and
        unliquidated damages;

    b.  Punitive damages;

---

[28] Travis S. Kniep bragged in a JOD podcast that his wife Kimberly has a talent for finding valuable real estate investments for him.  *See* Exhibit 14 at 33:00-33:45.
[29] *See* Exhibit 15.

c.  Treble damages, where appropriate;

d.  Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law;

e.  Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law from the date of judgment until paid in full;

f.  Court costs;

g.  Attorney fees; and

h.  All other relief, special or general, legal or equitable, as Plaintiff may be shown to be justly entitled to receive.

Respectfully submitted on this ___14th___ day of November, 2022.


Rain Levy Minns Udall
State Bar No. 24034581
Minns Law Firm, P.C.
d/b/a Rain Minns Law Firm
4412 Spicewood Springs Rd., Suite 500
Austin, Texas 78759-8583
Tel.: 512-372-3222
Fax: 512-861-2403
rain@rainminnslaw.com

ATTORNEY IN CHARGE FOR
PLAINTIFF JUAN JACOME